IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Cincom Systems, Inc., | : | Case No. 1:05cv152 |
| | : | |
| Plaintiff, | : | District Judge Susan J. Dlott |
| v. | : | |
| | : | Order Denying Defendants' |
| Novelis Corporation, *et al.*, | : | Motion for Summary Judgment |
| | : | and Granting in Part Plaintiff's |
| Defendants. | : | Motion for Summary Judgment |

This matter is before the Court on the parties' cross-motions for summary judgment.[1] For the reasons that follow, the Court denies Defendants' motion for summary judgment and grants in part Plaintiff's motion for summary judgment.

**I.     BACKGROUND**

The issue in this lawsuit is whether the direct merger of Alcan Aluminum Corporation ("Alcan Ohio") into Alcan Corporation, which then merged into its subsidiaries, resulted in an impermissible transfer of a non-transferable computer software license agreement (the "License Agreement") granted to Alcan Ohio by Cincom Systems ("Cincom").  Cincom granted Alcan Ohio a license to use Cincom's SUPRA© and MANTIS© software products in July 1989.  Alcan Ohio, d/b/a Alcan Rolled Products Co., used the software on computers located at its rolled products manufacturing plant in Oswego, New York. ("Software License Agreement Schedules

---

[1] *See* Defendants' motion for summary judgment (doc. 29), Plaintiff's opposition thereto (doc. 43), and Defendants' response in support (doc. 46).  *See also* Plaintiff's motion for summary judgment (doc. 37), Defendants' opposition thereto (doc. 45), and Plaintiff's response in support (doc. 47).

8, 9," Ex. B to Doc. 37 Ex. 2.) The License Agreement prohibits the transfer of rights under the agreement without Cincom's express written approval.

In July 2003, Alcan Ohio merged into its corporate affiliate, Alcan Corporation.[2] (Defendants' Stipulation of Facts ("Stipulation"), Doc. 37 Ex. 3 p. 1 ¶ 5; Declaration of C. Aley, Doc. 29 Ex. B ¶ 9.) Alcan Ohio, the licensee of the Cincom software, did not survive the merger. (Stipulation p. 1 ¶ 6; Aley Dec. ¶ 8.) Alcan Corporation subsequently merged into its three Texas subsidiaries: Alcan Products Corp., Alcan Primary Products Corp., and Alcan Fabrication Corp. (Stipulation p. 1 ¶ 3; p. 2 ¶ 2.)[3] The aluminum rolled products business of the former Alcan Ohio was assumed by the Alcan Fabrication Corp. subsidiary. (Aley Dec. ¶ 9.) In January 2005, Alcan Fabrication Corp. changed its name to Novelis Corporation ("Novelis"). (Stipulation p. 1 ¶ 3; p. 2 ¶¶ 2-4.) Novelis continues to use Cincom's SUPRA© and MANTIS© software on computers at the Oswego manufacturing plant. At no time did Alcan Ohio, Alcan

---

[2] Alcan Texas, a corporate affiliate of Alcan Ohio, changed its name to Alcan Corporation on May 28, 2003. (Stipulation p. 1 ¶ 3.) For the sake of clarity, the Court will refer to the corporation as Alcan Corporation when describing events occurring after May 28, 2003.

[3] Cincom proposed as an undisputed fact that "Alcan Corp. merged into Alcan Fabrication Corporation" (Doc. 37 Ex.1 ¶27.) Defendants deny this proposed fact and assert that "Alcan Corp. did not merge into Alcan Fabrication Corporation." (Doc. 45 Ex. 1 ¶27.) Taking as true Defendants' Stipulations, this denial has no merit. Alcan Texas changed its name to Alcan Corporation on May 28, 2003 (Stipulation p. 1 ¶3), and Alcan Texas (renamed Alcan Corporation) merged with and into the Texas subsidiaries, including Alcan Fabrication Corporation, on July 31, 2003 (*id.* at p. 1 ¶3).
  Defendants' proposed fact that "[t]he former Alcan Rolled Products Company was merged into Alcan Fabrication Corporation, which later changed its named [sic] to Novelis" (doc. 45 Ex. 1 ¶ 27) is contradicted by its own stipulation, which confirms that Alcan Ohio (d/b/a Alcan Rolled Products Company) was merged out of existence on July 30, 2003 (Stipulation p. 1 ¶ 6), one day before Alcan Corporation merged into Alcan Fabrication Corporation. The Court thus accepts Cincom's proposed fact that Alcan Corporation, not Alcan Rolled Products Company, merged into Alcan Fabrication Corporation.

Corporation, or Novelis seek or obtain Cincom's express written approval to transfer the License Agreement prior to these mergers.

Cincom contends that the above-described series of events resulted in an impermissible transfer and, accordingly, brought this lawsuit alleging federal copyright infringement claims against Novelis and Alcan (hereafter "Defendants").[4] Cincom moves the Court for summary judgment in its favor on liability and actual damages. Defendants argue that the mergers did not result in a transfer of the license and, thus, did not violate the license agreement's prohibition against transfers. They also move for summary judgment in their favor.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). On a motion for summary judgment, the movant has the burden of showing that no genuine issues of material fact are in dispute, and the evidence, together with all inferences that can permissibly be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986). The moving party may support the motion for summary judgment with affidavits or other proof or by exposing the lack of evidence on an issue for which the nonmoving party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

---

[4] Cincom's Complaint also asserted a claim of copyright infringement against CGI Information Systems ("CGI") and impleader against Alcan (doc. 11). Cincom dismissed CGI pursuant to Fed. R. Civ. Proc. 41(a)(2) (doc. 28) and resolved the impleader claim by means of a partial settlement agreement (doc. 37 n. 1). Accordingly, the only claim left for the court to decide is Cincom's claim of federal copyright infringement against Novelis and Alcan.

In responding to a summary judgment motion, the nonmoving party may not rest upon the pleadings but must go beyond the pleadings and "present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). The nonmoving party "must set forth specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The task of the Court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 249.

## III. ANALYSIS

### A. Applicable Law

As a preliminary matter, the Court must resolve whether state or federal law governs the issue of whether the series of mergers resulted in a transfer of the License Agreement from the licensee to Novelis. Cincom asserts that because the issue is one concerning copyright, federal law applies. Defendants, conversely, contend that the issue is one of contract interpretation and that Ohio law should apply pursuant to the License Agreement's choice of law provision. Both parties are, to an extent, correct.

First, Cincom is correct (and Defendants agree) that federal law governs the assignability of licenses. *PPG Indus., Inc., v. Guardian Indus. Corp.*, 597 F.2d 1090, 1093 (6th Cir. 1979). "It has long been held by federal courts that agreements granting patent licenses are personal and not assignable unless expressly made so." *Id.*[5] However, Defendants are correct that the question of whether a license has *in fact been assigned* depends on contract interpretation and,

---

[5] It is appropriate to refer to patent law in copyright cases "because of the historic kinship between patent law and copyright law." *Sony Corp. of America v. Universal City Studios, Inc.,* 464 U.S. 417, 439, 104 S. Ct. 774 (1984).

4

accordingly, is a matter controlled by state law. *See, e.g., Johnson v. Jones*, 885 F. Supp. 1008, 1013 n.9 (E.D. Mich. 1995) ("[C]ontract interpretation, which is normally the province of state courts and state law, can become a federal copyright issue"), *see also Encore Entm't, LLC v. Kiddesigns, Inc.*, Case No. 3:03 1129, 2005 WL 2249897 (M.D. Tenn. Sept. 14, 2005) (considering the scope of certain licenses to use copyrighted work and noting that "[w]hile the court relies on state law to provide the canons of contractual construction, such laws are relied upon only to the extent that they do not interfere with federal copyright law or policy" (citing *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1088 (9th Cir. 1989))). The Court agrees that the question of whether the Defendants breached the License Agreement's non-transfer provision is a matter of contract law. However, the Court must apply Ohio law on this issue in a manner that does not conflict with federal copyright law and policy.[6]

### B. Effect of the Mergers on the License Agreement

Defendants argue that Ohio's merger statute supports their position that the series of events leading to the creation of Novelis did not result in a transfer of the License Agreement from the licensee, Alcan Ohio, to Novelis. Ohio's merger statute, modeled after the Model Business Corporations Act § 11.07, provides that:

> [t]he surviving or new entity possesses all assets and property of every description, and every interest in the assets and property, wherever located, and the rights, privileges, immunities, powers, franchises, and authority, of a public as well as of a private nature, of each constituent entity, and ... all obligations belonging to or

---

[6] Though it did not expressly discuss the intersection of state and federal law, the Sixth Circuit Court of Appeals in *PPG Industries v. Guardian Industries Corporation* determined whether a patent license was impermissibly transferred as a consequence of a merger first by analyzing the assignability of the license under federal law and, second, by analyzing whether the license had been assigned under state statute. 597 F.2d 1090, 1093-95, 1095-96 (6th Cir. 1979).

> due to each constituent entity, *all of which are vested in the surviving or new entity without further act or deed*.

Ohio Rev. Code § 1701.82(3) (emphasis added). Defendants posit that because the statute specifies that the assets of the constituent entity, in this case Alcan Ohio, "are vested" in the surviving entity, in this case Novelis, they are not "transferred." Defendants cite the Model Business Corporations Act and the Texas Appellate Court decision in *TXO Production Co. v. M.D. Mark, Inc.*, 999 S.W.2d 137 (Ct. App. Tex. 1999) as support for their position on the application of the Ohio statute to the facts herein.

The Comment to the Model Business Corporations Act explains that "in the case of a merger[,] the survivor and the parties that merge into the survivor become one .... *A merger is not a* conveyance, *transfer*, or assignment." Model Bus. Corp. Act. § 11.07, Official Comment (1985) (emphasis added). The court in *TXO*, construing Ohio and Texas merger statutes–both of which are based upon the Model Business Corporations Act–concluded that the merger of the corporation that had contractual rights to use seismic data did not constitute a transfer of that data to a third party as prohibited by the confidentiality provision of the contract with the data owner. According to the court, "[u]nder the merger statutes it is clear that all of TXO's interests vested in Marathon immediate upon the merger. Further, under these provisions *there is no transfer* of the rights of the merging corporation; rather, the rights vest automatically and without further action." *TXO*, 999 S.W.2d at 142 (emphasis added).

Cincom counters that, notwithstanding the language of Ohio's merger statute, the series of events leading to the creation of Novelis resulted in a transfer of the software license in violation of the License Agreement's terms. Cincom relies heavily on *PPG Industries, Inc. v. Guardian Industries, Corp.*, 597 F.2d 1090 (6th Cir. 1979), in which the Sixth Circuit Court of

6

Appeals concluded that a merger resulted in an impermissible transfer of patent license rights. In deciding that the merger constituted an unauthorized transfer of the patent rights, the *PPG* Court noted that the agreement itself evinced an intent that only the licensee was to enjoy the privileges of the license. "If the parties had intended an exception in the event of a merger, it would have been a simple matter to have so provided in the agreement." *Id*. at 1095.

*PPG* is controlling authority and, unless distinguishable, guides this Court to find in Cincom's favor and hold that the series of mergers had the effect of an impermissible transfer of the software license agreement from Alcan Ohio to Novelis. Defendants try mightily in their motion to distinguish *PPG* from the instant case. Most significantly, Defendants point out that Ohio's merger statute at the time *PPG* was decided has since been amended by the Ohio legislature. The statute considered by the *PPG* Court provided that following a merger, all property of a constituent corporation was "deemed to be ***transferred to and vested in*** the surviving or new corporation without further act or deed." *Id.* at 1096 (quoting former Ohio Rev. Code § 1701.81(A)(4)) (emphasis added). In contrast, Ohio's merger statute no longer includes the word "transferred" but states simply that the property is "vested in" the surviving corporation. Ohio Rev. Code § 1701.82(3).

The Court is convinced that the precedent of *PPG* survives the statute's revision in the instant context. The court in *PPG* was unequivocal in its conclusion that "[a] transfer is no less a transfer because it takes place by operation of law rather than by a particular act of the parties. The merger was effected by the parties and the transfer was a result of their act of merging." *PPG*, 597 F.2d at 1096. Furthermore, the *PPG* court did not wholly base its conclusion on the word "transferred" in the Ohio merger statute, as evidenced by the fact that it also considered the

Delaware merger statute, which like the present Ohio statute did not include the word "transferred" but provided that the property of the constituent corporation "shall be vested in" the surviving corporation. *Id*.

Defendants' citation to numerous Ohio cases holding that a successor corporation automatically succeeds to all rights and obligations of the constituent corporation–i.e., that a merger is not a transfer–are not availing in the context of this copyright license dispute. (Doc. 29 at 9.) The Court does not dispute the validity of the cases cited by Defendants for the proposition that certain contractual obligations are vested in the surviving corporation. *See*, *e.g.*, *Transcontinental Ins. Co. v. SimplexGrinnell LP*, 2006 WL 2035571, at *3 (N.D. Ohio 2006) (holding that there was no need to assign contractual obligations in the context of a merger); *ASA Architects, Inc. v. Schlegel*, 665 N.E.2d 1083 (Ohio 1996) (holding that there was no need to transfer employment contract following a merger); *Conrad v. Chi Chi's USA, Inc.*, 1993 WL 360289, *6 (Ohio Ct. App. Sept. 9, 1993) (holding that surviving corporation had automatically assumed the constituent corporations' liquor permits). However, none of the Ohio cases cited by Defendants address the application of Ohio's merger statute to a non-transferrable copyright license.

Courts considering the issue of whether a merger has the effect of a transfer of intellectual property licenses do not decide the issue in a legal vacuum but are compelled to consider specific facts attendant to the merger. For example, lending to the *PPG* court's conclusion that an impermissible transfer of rights had occurred was the fact that the original licensee did not survive the merger. *PPG*, 597 F.2d at 1094 (distinguishing *Hartford-Empire Co. v. Demuth Glass Works, Inc.*, 19 F. Supp. 626 (E.D.N.Y. 1937), in which the patent licenses

8

were expressly renewable and the surviving corporation was the original licensee). On the other hand, the Sixth Circuit found that when the copyright owner survives a merger, there is no transfer of the copyright. *Forry, Inc. v. Neundorfer, Inc.*, 837 F.2d 259, 262 (6th Cir. 1988) ("Since Drysdale, Inc. was the registered owner of the copyright *before* the merger, and as the surviving corporation possessed it *after* the merger, the merger did not effect a transfer of the copyright."). In this case, the licensee, Alcan Ohio, "was merged out of existence on July 30, 2003." (Stipulation p. 1 ¶ 6.) Furthermore, the surviving entity of that merger, Alcan Corporation (Alcan Texas) then merged again into its subsidiary Alcan Fabrication Corporation, which then changed its name to Novelis. The Court is persuaded that the precedent of *PPG* and *Forry* point to a conclusion that when Alcan Ohio was merged out of existence, its rights under the License Agreement were transferred to Alcan Corporation. As the Sixth Circuit made clear in *PPG*, "[a] transfer is no less a transfer because it takes place by operation of law rather than by a particular act of the parties. The merger was effected by the parties and the transfer was a result of their act of merging." 597 F.2d at 1096.

Defendants claim that Alcan Ohio, the licensee, has "for all intents and purposes, changed its name to Novelis Corporation." (Doc. 29 at 4.) If, in fact, Alcan Ohio had merely changed its name to Novelis, its rights under the License Agreement would not have been effected. *SQL Solutions, Inc. v. Oracle Corp.*, No. C-91-1079, 1991 WL 626458, at *3 (N.D. Cal. Dec. 18, 1991). However, this was not the case. Alcan Ohio did not merely change its name; it ceased to exist.

Defendants also argue that because the merger was between subsidiaries of the same parent company, and the software continued to be used on the same computers, Cincom's ability

9

to police and control its rights were not affected. Accordingly, they argue, Cincom now has a license with the same business entity with whom it has always had. While it is true that both Alcan Ohio and Alcan Corporation were subsidiaries of the same parent corporation and that the software continued to be used on the same computers, Defendants have failed to demonstrate with precedential authority that these facts preclude a conclusion that a transfer of rights occurred. Defendants refer to *Synergy Methods, Inc. v. Kelly Energy Systems, Inc.*, 695 F. Supp. 1362 (D.R.I. 1988) for its discussion concerning whether a merger has adversely affected a licensor's rights. The *Synergy* court decided that the validity of a transfer of rights under a license agreement resulting from a change in the licensee's legal form of ownership depended upon whether the transfer adversely affected the interests of the licensor. *Id*. at 1366. However, at least one other court has found that a merger would result in an impermissible transfer of a license even in the apparent absence of an adverse effect on the licensor. *Council of Better Business Bureaus, Inc. v. Better Business Bureau, Inc.*, No. 99-CV-282, 1999 WL 288669 (N.D.N.Y. March 30, 1999) (finding that a merger between two licensees of the same service mark would putatively transfer the license held by the disappearing company in violation of the agreement's express prohibition on transferability).

      The Sixth Circuit in *PPG* focused on the rule that patent licenses are non-assignable unless expressly made so, and it found that a merger results in a transfer of such license when the original licensee does not survive the merger. The Sixth Circuit did not suggest that a merger between a parent and subsidiary should be treated differently than one between unrelated entities, and it did not hold that whether a merger results in a transfer of a license agreement depends on proof that the licensor has suffered a certain measure of adverse impact.

10

Accordingly, this Court cannot assume that the Sixth Circuit would find these latter factors to outweigh the general rule that intellectual property licenses are personal to the licensee and that a direct merger results in the transfer of the license to the surviving entity.

The Court cannot ignore federal law and policy supporting the non-assignability of intellectual property rights. "It has long been held by federal courts that agreements granting patent licenses are personal and not assignable unless expressly made so." *PPG*, 597 F.2d at 1093. "Chief among the[] purposes [underlying federal copyright law] is the protection of the author's rights." *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1088 (9th Cir. 1989). Thus, the Court cannot fairly apply to *this* case the law concerning the effect of a merger on a constituent corporation's contracts when those contracts do not pertain to intellectual property rights. This stance is in keeping with the logic of *PPG*, in which the court distinguished freely-transferrable "shop rights" and real estate leases from patent licenses. *Id*. at 1095 (noting that the policy supporting the assignability of leases did not apply to patents); *see also SQL Solutions, Inc. v. Oracle Corp.*, 1991 WL 626458, at *4 (N.D. Cal. 1991) (holding that an illegitimate transfer of rights under a copyright license occurred as a result of a corporate merger and distinguishing case law permitting the transfer through merger of real estate leases).

The case on which Defendants primarily rely, *TXO Production Co. v. M.D. Mark, Inc.*, can be distinguished on this ground as it does not involve intellectual property rights. In *TXO*, the court held that the merger of a subsidiary, which had contractual rights to use seismic data, into its parent company, did not constitute a transfer or disclosure of seismic data as prohibited by the confidentiality provision of the subsidiary's contract with the data owner. The *TXO* court specifically distinguished *PPG*, noting that "[t]he *PPG* opinion also was based upon strong

11

public policy against the implied assignment of patent licenses" and that the plaintiff in the case before it had failed to show that seismic data was a trade secret akin to patent rights. 999 S.W.2d at 142 n. 4.

For these reasons, the Court finds that the series of events leading to the creation of Novelis Corporation resulted in an impermissible transfer to Novelis of the License Agreement granted to Alcan Ohio by Cincom. Thus, when Novelis used and copied the software subject to the License Agreement, which it has done since at least January 2005, it infringed upon Cincom's copyright. The Court is of the opinion that its Order on this issue, the effect of the mergers on the License Agreement, involves a controlling question of law as to which there is substantial ground for difference of opinion, and an immediate appeal from the Order may materially advance the ultimate termination of the litigation.

### C. Damages

Cincom asserts Defendants are liable to it under 17 U.S.C. § 504(a) for its actual damages, which it claims equals the amount of the standard initial licensing charge for the software products at issue. Cincom states, and Defendants do not dispute, that the initial licensing fee is $459,530. (Doc. 45 Ex. 2 ¶ 13.) Defendants' briefing on the cross-motions for summary judgment focuses on their denial of liability and does not address the amount of damages to which Cincom would be entitled were judgment entered in its favor. Accordingly, Defendants have not presented evidence to contradict the fact that Cincom's actual damages resulting from Defendants' infringement is the $459,530 initial license fee.

Nevertheless, "[w]hen the moving party bears the burden of persuasion at trial, the movant must satisfy this burden by pointing to evidence in the record that supports the movant's version of all material facts and demonstrates the absence of any genuine issue of material fact." *DeWitt v. Penn-Del Directory Corp.*, 872 F. Supp. 126, 137 (D. Del. 1994) (*citing National State Bank v. Federal Reserve Bank*, 979 F.2d 1579, 1582 (3d Cir.1992)). "If the moving party does not meet this standard, the Court must deny the motion for summary judgment, even if the non-moving party does not present opposing evidentiary materials. In other words, the moving party with the burden of persuasion at trial must show that it would be entitled to a judgment as a matter of law." *Id*.

The Court finds that the record does not present sufficient evidence to show that the $459,530 initial license fee is the amount of actual damages Cincom sustained as a result of Novelis' use of the SUPRA© and MANTIS© software. Cincom has shown that CGI, an outsourcer retained by Novelis to manage its computer systems and applications, paid Cincom an initial license fee of $459,520 in 2004 for the right to use the SUPRA© and MANTIS© software at Novelis (doc. 37 Ex. 1 ¶¶ 37-42). However, this does not demonstrate that this is the same fee that Alcan Corporation, Alcan Fabrication Corporation, or Novelis would have paid if these entities had negotiated a license fee to use the software after Alcan Ohio was merged out of existence. Because the evidence presented by Cincom is insufficient to demonstrate to the Court that it is entitled as a matter of law to $459,530 in damages, the Court cannot grant summary judgment on this issue.

**D.     Costs and Fees**

Cincom in its Complaint requests that the Court award it its fees and costs associated with the lawsuit against Defendants pursuant to 17 U.S.C. § 505. Defendants argue that the License Agreement between Alcan Ohio and Cincom, which provides that each party is to bear its own costs and attorney fees in any lawsuit other than to collect amounts due under the Agreement, prohibits Cincom from such an award. (Doc. 29 Ex. A ¶ 9.5.) As Cincom points out, the Defendants were not parties to the License Agreement. Thus, the general provision of the Agreement pertaining to attorney fees does not apply to the dispute herein. Defendants' motion for summary judgment on Cincom's request for attorney's fees is therefore denied. In so holding, the Court does not express an opinion as to whether, in fact, an award of costs and attorney's fees are warranted in this case. The Court reserves judgment on that issue until trial.

**IV.     CONCLUSION**

For the foregoing reasons, the Court **DENIES** Defendants' Motion for Summary Judgment and **GRANTS IN PART** Plaintiff's Motion for Summary Judgment.

IT IS SO ORDERED.


    s/Susan J. Dlott
Susan J. Dlott
United States District Judge